# EXHIBIT G

AMERICAN ARBITRATION ASSOCIATION

PETER SLINGLUFF,

           Claimant                    Case Number: 01-14-0001-7650

    -against-

GOTTA HAVE IT! AUCTIONS, INC.,
GOTTA HAVE ROCK AND ROLL.COM LLC
and EDWARD KOSINSKI,

---

AMENDED ANSWER OF RESPONDENTS GOTTA HAVE ROCK AND ROLL.COM LLC,
GOTTA HAVE IT! AUCTIONS, INC. AND EDWARD KOSINSKI
TO STATEMENT OF CLAIM BY PETER SLINGLUFF

    Respondents Gotta Have It Auctions!, Inc., Gotta Have Rock and Roll.com LLC, and

Edward Kosinski, by their attorneys Bernstein Cherney LLP, submit this Amended Answer to

the Statement of Claim filed by Claimant, Peter Slingluff.

I.    INTRODUCTION

    Claimant Peter Slingluff's ("Slingluff") allegations against Respondents are devoid of

merit and factually unsupportable.[1]  Slingluff's "Claim Description" misstates and distorts the

nature, terms and circumstances of the transactions in question.  As more fully described below,

Slingluff sold certain items of memorabilia, on terms negotiated and accepted by him, almost

five years ago.  In essence, he now wishes to renegotiate the terms of that transaction based upon

a fabricated version of events and a fanciful notion that he is entitled to proceeds from a later,

unrelated auction.  These allegations have no basis in fact.  As such, they should be summarily

dismissed.

---

[1]  Subsequent to the filing of the Statement of Claim, Claimant agreed to withdraw his claim against Gotta Have It!
Auctions, Inc. which has never entered into an arbitration agreement with Claimant and which does not consent to
arbitration of this matter.

II.   FACTUAL BACKGROUND

A.   Respondents' Background

Respondent Gotta Have Rock and Roll.com ("GHRR"), a Delaware limited liability company, has been conducting online auctions of Rock & Roll collectibles and other valuable memorabilia since 2008.  Over that time, GHRR has established itself as a highly-respected and leading source for significant and historic items, including, among many other items, memorabilia from Elvis Presley, John Lennon, Michael Jackson and Princess Diana.  GHRR's affiliate, Gotta Have It! Collectibles Inc. ("GHI"), which maintains its retail presence at 153 East 57th Street, New York, N.Y., has been a premier source of Sports, Entertainment, Rock & Roll and Historical memorabilia since 1994.

Edward Kosinski ("Kosinski"), who is a principal of both GHI and GHRR, is noted for his extensive knowledge of entertainment memorabilia, and has consulted with the Rock & Roll Hall of Fame in Cleveland, Ohio and Paul Allen's Experience Music Project in Seattle, Washington, where he assists with the authentication of vintage and contemporary music artifacts.

B.   Slingluff's Background

Upon information and belief, Slingluff is a sophisticated collector and professional dealer of Rock and Roll memorabilia, whose Rock & Roll collectibles have been exhibited at the Morgan Library and Museum and who, in 2005, filed an application with the U.S. Patent & Trademark Office to trademark the name, "The Museum of Rock and Roll."

2

### C.   Slingluff Decides to Sell Collectibles

In late 2009, Slingluff contacted GHRR in order to arrange for the auction of approximately eight Rock & Roll collectibles, including (a) handwritten lyrics to the song "Billy Jean" which were signed by Michael Jackson; and (b) a Michael Jackson promotional poster containing handwritten lyrics to the song "We Are the World" (collectively the "Jackson Items"). To facilitate that process, Slingluff entered into a consignment agreement with GHRR (the "Consignment Agreement") which provided, among other things, that the items would be listed for sale on GHRR's online auction site. (A copy of the Consignment Agreement is annexed hereto as Exhibit A).   Upon information and belief, Slingluff was well-acquainted with the memorabilia auction process, having consigned items to several auction houses in the past, including a previous GHRR auction.

It was, and remains, the practice of GHRR (and most auctions) to establish a "Reserve Price" for each auction item.  The "Reserve Price" represents the lowest price that GHRR will accept from a bidder for the item.  In accordance with this practice, Slingluff designated a "Reserve Price" for each of the items he wished to sell, directing GHRR to set $30,000.00 as the minimum bid for each of the Jackson Items.  Kosinski specifically recommended that Slingluff lower the "Reserve Price" for each Jackson Item in order to generate more bidding interest.  In Kosinski's opinion, that strategy would be more likely to encourage greater participation and could create a bidding competition that would result in any even higher return.  Conversely, he also believed, and specifically advised Slingluff, that the $30,000.00 minimum bid prices could discourage bidding.  Despite receiving Kosinski's expert advice, Slingluff rejected it and insisted upon the $30,000.00 reserve for each Jackson Item, as reflected on Schedule A to the Consignment Agreement.

The GHRR auction is conducted on a publicly accessible website, where it can be viewed by bidders, and sellers can keep abreast of bidding. The Jackson Items were placed in the GHRR auction on March 1, 2010 as Lots Nos. 15 and 16. The auction closed on March 11, 2010. Unfortunately, there were zero bids on the Jackson Items during that auction period. Slingluff was, or should have been, well-aware of that fact since all bidding for the two Lots was publicly available and easy to view on the online auction website. Indeed, as reflected by the "screen shots" attached hereto as Exhibit B, the listings for the Jackson Items, which terminated when the auction was concluded on March 11, 2010, can still be viewed on the GHRR auction site to this day. In other words, Slingluff has had access to this information for the past five years and only now raises the objections set forth in his claim. It is absurd for him to now claim, that he believed the Jackson Items were sold through the online auction. They clearly were not.

   D.   Post- Auction Sale of the Jackson Items

After the auction concluded, GHRR confirmed to Slingluff that there had been no bidders for the Jackson Items. It is not unusual for an auction house to receive offers for items after an auction ends. In this instance, GHRR received an offer, after the auction was concluded, to purchase the two Jackson Items for a total of $20,000.00. GHRR advised Slingluff of that offer and he rejected it, stating that he needed money to pay a debt to his mother and would sell the two Jackson Items for a total price of $45,000.00. In a subsequent conversation, Pete Siegel of GHI advised Slingluff that there was an opportunity for Slingluff to sell the two Jackson Items in a private sale outside of the auction process, for the aggregate sum of $45,000.00 - less a 10% commission. That transaction was no longer governed by the Consignment Agreement, which related solely to the online public auction by GHRR. What followed, therefore, was a new, independent agreement for the sale of these items. **Slingluff accepted the $45,000.00 offer.** He

4

initially haggled over the commission, but when that request was rejected, Slingluff agreed to accept the sum of $40,500.00 in full payment for the Jackson Items. At his specific request a check in that amount was made payable to his mother, as his attorney-in-fact, deposited, and cleared.

### E.    Slingluff Has Provided a False and Incomplete Narrative of Events

Slingluff's claim offers a series of false assertions and irrelevant innuendos, none of which support his claims.

### 1)    Respondents Did Not Breach the Consignment Agreement

There is no basis upon which Slingluff can credibly assert that GHRR breached the Consignment Agreement.[2] As provided in the Consignment Agreement, GHRR offered the Jackson Items for sale on its online auction site. In accordance with Slingluff's directions, and against the explicit advice of Kosinski, GHRR placed a reserve of $30,000.00 on each item during the time of the auction. The auction ended on March 11, 2010, and with it, the consignment for purposes of auction. Respondents never told Slingluff that the Jackson Items had been sold at auction – they gave him precisely the opposite report. Indeed, as set forth above, and reflected on Exhibit B, the results of the auction – no bids and no sale – were visible for all to see. The subsequent sale was the product of a new and separate agreement.

### 2)    Respondents Did Not Wrongfully Retain the Jackson Items After the Auction

Respondents did not "retain" the Jackson Items for themselves. Slingluff sold them at a fair price, having accepted an offer that he was free to reject or counter; he received and accepted payment without protest or complaint; and he remained, silent for **five years**. During that protracted period his sole complaint was that he did not wish to pay any commission. As an

---

[2] It should be noted that Kosinski was not a party to the Consignment Agreement. Therefore, there is absolutely no basis for asserting any claim of breach of that Agreement against him individually.

expert in collectibles, Slingluff was abundantly aware that he had received the best offer – indeed the only offer – at that point in time. He evinced no interest in holding onto the items in hope of obtaining a better price at a later date, perhaps motivated by the need for immediate cash that he communicated to Siegel and GHI.

3)    The Identity of the Purchaser Is Irrelevant

The identity of the purchaser of the Jackson Items has no bearing on the propriety of the transaction; given the absence of any auction bids and the single post-auction offer to purchase the items, Slingluff had a simple choice, which was within his sole control. He could either accept the offer or reject it and accept the return of the Jackson Items. He elected to accept it. Notably, Slingluff did not seek to ascertain the identity of the buyer at the time because he understood that it was of no consequence. Aside from the $20,000 post-auction offer noted above, **there were no other offers – at any price**.

Still, Slingluff claims that he was deceived because GHI did not disclose the identity of the purchaser. This, however, is common practice in auctions and the collectible industry, where both buyers and sellers rely upon, and expect, confidentiality and anonymity. As an experienced participant in auctions – as both a buyer and a seller – Slingluff was well-aware of this practice. In this instance the purchaser was Kosinski, who purchased the items in his individual capacity, paying a commission to GHI and the negotiated price to Slingluff. In the absence of any other interest in the Jackson Items, Kosinski was willing to purchase them for his own personal collection, having no idea whether, when, or at what price he might re-sell the items in the future. Moreover, although anonymity is the general rule with such sales, there is ample reason to believe that Slingluff was aware of the buyer's identity here.

4)    Any Future Sales of the Jackson Items Are Similarly Irrelevant

6

Slingluff's claim, that Respondents "retained ...or conveyed the [Jackson Items] to a related party...so that they could obtain the actual value of the [Jackson Items]" is patently absurd. The actual value of the Jackson Items at the time Slingluff sold them was $45,000.00. As with any other item, the market establishes value. There was no market for the items at $60,000.00, as established by the absence of any auction interest. Consequently the market was established by the only offer and Slingluff's acceptance at $45,000.00.

Subsequent sales of the Jackson Items, at any time, are immaterial. Markets fluctuate due to a variety of factors, none of which were within the control of Respondents. Nevertheless, Slingluff now apparently suffers from seller's remorse after seeing the Jackson Items sell at a later auction (not conducted by GHRR or any of its affiliates) for $312,000.00. Like an investor who sold stock at $10 a share, only to see it rise to $100 a share, Slingluff is sorry he sold. That does not, however, afford him a right to those subsequent proceeds. Certainly, he would not be asking to return his profits if the Jackson Items later sold for $35,000.00, just as the investor would not offer to return his profit if those shares had dipped to $2.00.

Finally, it is important to remember and recognize that Slingluff, with all of his expertise as a collector, had been prepared to accept $60,000.00 at auction – a far cry from the $312,000.00 he now demands. Consequently, even if he believed that he did not receive a fair price for the Jackson Items, at most he might have hoped to receive an additional $15,000.00 (less commissions). Even a claim for that amount, however, lacks merit.

5)    <u>Respondents Have Neither Breached Any Fiduciary Duty Nor Engaged in Fraud</u>

After entering into the Consignment Agreement, GHRR acted, at all times, in accordance with Slingluff's specific instructions and consent. The Jackson Items were listed for auction, at the reserve price selected by Slingluff, on GHRR's public online auction site. When they failed

7

to attract interest, Slingluff accepted an offer to purchase the items in a private sale, at a price that was set by him and acceptable to him. Slingluff had the ability and opportunity to withdraw the items from auction at any time or to decline the offer to purchase. He did neither, although he did attempt to negotiate down GHRR's commission. Respondents acted in good faith and consistent with their fiduciary obligations by presenting the items for auction under the Consignment Agreement. Once the auction was concluded they properly conveyed to Slingluff both the $20,000.00 offer (which he rejected) and the offer to purchase the items for the $45,000.00 he was now asking (which he accepted). Slingluff's decision to sell was not predicated upon the identity of the purchaser, but on the amount of the offer.

III.   GENERAL DENIAL

Respondents generally and specifically deny each and every substantive allegation contained in the Statement of Claim, and further deny that Slingluff has been damaged in any amount whatsoever by any alleged conduct of Respondents. Any specific allegations not addressed herein should be deemed denied. All claims against Respondents should be dismissed in their entirety with prejudice, and Respondents should be awarded their costs incurred in defending this meritless action.

IV    AFFIRMATIVE DEFENSES

1.     Slingluff fails to state facts sufficient to constitute any claim or cause of action against Respondents.

2.     Respondents made no material misrepresentations, false or fraudulent statements to Slingluff, and thus the claim for fraud cannot be sustained.

8

3.      At no time did Respondents breach any fiduciary duty owed to Slingluff.

4.      Slingluff's claims are barred by the doctrine of laches.

5.      Slingluff accepted payment for the Jackson Items, without protest.

6.      As an experienced dealer in collectibles, Slingluff was fully familiar with the customs and standards of auction practice and the collectibles industry.

7.      Respondents, at all relevant times, acted in a commercially reasonable manner and in accordance with industry practices in their dealings with Slingluff.

8.      Slingluff suffered no damages by virtue of his relationship with Respondents.

9.      Under applicable law, Slingluff is not entitled to the relief requested in his Statement of Claim.

## V.    RELIEF REQUESTED

WHEREFORE, Respondents Gotta Have Rock and Roll.com LLC and Edward Kosinski respectfully request that:

1.      Claimant's Statement of Claim be dismissed in its entirety with prejudice;

2.      Respondents be awarded all forum fees, costs, attorney's fees and expenses incurred by Respondents in connection with this proceeding; and

3.      That the Arbitrator award Respondent such additional relief as the Arbitrator deems just and proper.

Dated:  June 1, 2015

Hartley T. Bernstein
Bernstein Cherney LLP
Attorneys for Respondents
767 Third Avenue, 30th Floor
New York, N.Y. 10017
(212) 381-9684

9

# EXHIBIT A

CONSIGNMENT AGREEMENT BETWEEN

**Gotta Have Rock and Roll.com**
**153 East 57th Street**
**New York, NY 10022**
**(212) 750-7900**

AND   Peter Slingluff

Gotta Have Rock and Roll.com ("GHRR"), confirms its agreement with Consignor as follows:

1.    **CONSIGNMENT:** Consignor hereby consigns to GHRR the property identified in the attached Schedule A (the "Property") that GHRR, as Consignor's agent, will offer for sale at public online auction, subject to the provisions set forth below.   GHRR shall not have any authority to act on behalf of or bind Consignor in any manner except as expressly authorized by this Agreement or by a separate writing signed by Consignor.

2.    **COMMISSION:**  For its services, GHRR will receive and retain from the sale of the Property a commission from Consignor equal to ⁿ/ₒ of the hammer price of each lot (excluding any buyer's premium).

3.    **INSURANCE:**  The Property will be insured by GHRR at Consignor's expense from the time of receipt by GHRR until it ceases to be in GHRR's custody (when property has been shipped) for an amount equal to (i) for Property which has been sold, the sale price, (ii) for Property which has failed to sell at auction, the reserve price, or (iii) for Property not yet offered for sale, the mean of the presale estimates obtained by GHRR without cost and supplied to Consignor prior to the start of the sale (the "Insured Amount").  GHRR will include an insurance fee of 1.5% of the Insured Amount in any invoice sent to Consignor.  GHRR's liability to Consignor resulting from loss of or damage to any Property shall not exceed the above-mentioned insurance coverage of such Property.  While GHRR undertakes to exercise reasonable care in handling the Property, it shall not be responsible for any damage to any Property caused by climatic or atmospheric conditions or, if applicable, for any damage to picture frames or to glass thereon.

4.    **PACKING, SHIPPING AND CUSTOMS DUTIES:**  Consignor agrees to pay all costs and expenses of packing and shipping the Property to GHRR's premises, and to Consignor if any Property is returned to Consignor. Consignor also agrees to pay all applicable customs duties and customs user fees on the Property required by applicable law.   While GHRR will suggest a carrier at Consignor's request, it accepts no responsibility whatsoever in connection therewith. GHRR reserves the right to arrange for storage of the Property in a third-party warehouse at Consignor's expense provided that GHRR notifies Consignor in advance.

5.    **IMAGING:**  There will be no fees for illustration or photography.

GHRR_CONSIGN.doc
New York

6.   **PROMOTIONAL MATERIALS:**  Consignor shall not have the right to approve in advance or otherwise any promotional materials which GHRR creates and uses in connection with its promotion of Consignor's Property as contemplated herein.

7.   **DISCRETIONARY MATTERS:**  GHRR shall not be liable for any errors or omissions in catalogue or other Property descriptions that Consignor provides to GHRR.  GHRR shall retain the exclusive copyright to all catalogue and other illustrations and descriptions of the Property created by GHRR if not otherwise transferred to a third party as part of GHRR's contract with such party, except that GHRR shall not acquire or retain any copyright or other intellectual property right relating to Consignor or any other intellectual property right pertaining to Consignor or its affiliates or any product of Consignor or its affiliates.  GHRR makes no representations or warranties to Consignor with respect to the Property, its authenticity, condition or otherwise.  Consignor reserves the right to terminate the consignment of the Property at any time prior to the commencement of the sale, in which case Consignor shall only be responsible for the actual costs and expenses (but not the commission) incurred by GHRR pursuant to this Agreement.  **IN NO EVENT SHALL GHRR AND/OR OUR SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS OR SUPPLIERS BY LIABLE TO THE CONSIGNOR FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING (WITHOUT LIMITATION) LOST PROFITS AND/OR LOST INCOME, WHETHER OR NOT WE HAD KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED, FOR ANY REASON WHATSOEVER, INCLUDING (WITHOUT LIMITATION) DAMAGES ALLEGEDLY ARISING OUT OF OR IN CONNECTION WITH OUR SITE, OUR SERVICES OR THIS AGREEMENT.**

8.   **SETTLEMENT OF ACCOUNT:**  Subject to the next sentence of this paragraph 8, twenty one (21) days immediately following the close of the auction (the "Settlement Date"), GHRR will pay Consignor the net proceeds actually received and collected from the sale of the Property.  GHRR will not make payment on sales that GHRR has received notice of the buyer's intention to rescind the sale or of any other bona fide claim relating to the Property or its sale prior to the Settlement Date.  In the event that Consignor has agreed to arrangements for payment by the buyer which extend beyond the Settlement Date, such date and the amount payable to Consignor thereon shall be adjusted accordingly.

9.   **RESCISSION OF SALE:**  GHRR, as Consignor's agent, is authorized to accept the return of and rescind the sale of any Property at any time if GHRR in its sole judgment determines that the offering for sale of any Property has subjected or may subject GHRR and/or Consignor to any liability, including liability under warranty of authenticity or title or relating to the alleged infringement of any person's intellectual property rights.  In such event, GHRR is further authorized to refund or credit to the buyer the purchase price of such returned Property.  If GHRR has already remitted to Consignor any proceeds of the rescinded sale, Consignor forthwith shall pay GHRR upon request an amount equal to the remitted proceeds, including any expenses that have been incurred.

10.   **CONSIGNOR'S REPRESENTATIONS AND WARRANTIES:**   Consignor represents and warrants that (i) Consignor has the right and title to consign the Property for sale, (ii) the Property is fully authentic (Consignor will provide GHRR with a list of the items

including written representation as to what each item is), (iii) the Property is, and until the completion of sale by GHRR, will be, free and clear of all liens, claims and encumbrances of others or restrictions on GHRR's right to offer and sell the Property, (iv) upon sale, good title and right to possession will pass to the buyer free and clear of any such liens, claims, encumbrances or restrictions and (v) there are not and there will not be, any restrictions on GHRR's right to photograph, reproduce photographs of or exhibit the Property. Consignor agrees that such representations and warranties are for the benefit of GHRR and buyers of the Property and that such representations and warranties shall survive the completion of the transactions contemplated hereby. Consignor agrees to notify GHRR promptly in writing of any events or circumstances that may cause the foregoing representations and warranties to be inaccurate or breached in any way. If Consignor is acting as an agent for a principal, Consignor and principal, jointly and severally, assume all of the obligations under this Agreement.

11.   **INDEMNIFICATION:** Consignor shall defend, indemnify and hold harmless GHRR from and against any and all losses, damages, liabilities and claims, and all fees, costs and expenses of any kind related thereto (including, without limitation, reasonable attorneys' fees) (collectively, "Losses"), as incurred, arising out of, based upon and resulting from (i) any act by or omission of Consignor or its agents (other than GHRR) or representatives relating to or affecting the Property, (ii) any inaccuracy or alleged inaccuracy, asserted by GHRR or any third party, of any representation or warranty made by Consignor pursuant to this Agreement or (iii) the claim of any buyer or any other person resulting from GHRR's offering for sale or selling any Property, except to the extent that such claim is attributable to the wrongful acts or omissions or violations of law by GHRR and not by Consignor. GHRR shall defend, indemnify and hold harmless Consignor from and against any and all Losses arising out of, based upon and resulting from (i) any breach of this Agreement by GHRR, and (ii) any wrongful act or omission or violation of law to the extent caused by GHRR and not by Consignor.

12.   **MISCELLANEOUS:**   This Agreement constitutes the entire agreement and understanding between the parties with respect to the transactions contemplated hereby and supersedes all prior agreements relating to the Property. This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. Any such controversy or claim will be arbitrated on an individual basis, and will not be consolidated in any arbitration with any claim or controversy of any other party. The arbitration will be conducted in the City of New York, Borough of Manhattan, State of New York, and judgment on any arbitration award may be entered into any court having competent jurisdiction thereof.   **THE PARTIES IRREVOCABLY WAIVE THEIR RIGHTS TO A TRIAL BY JUDGE OR JURY WITH RESPECT TO ANY CONTROVERSY OR CLAIM ARISING HEREUNDER, AS THEIR SOLE RECOURSE SHALL BE BINDING ARBITRATION.** An arbitrator shall award to the prevailing party, in addition to any other relief deemed appropriate, the prevailing parties' reasonable attorney's fees and costs of arbitration, whether or not those are otherwise available to the prevailing party by statute. This Agreement shall be binding upon Consignor's heirs, distributees, executors, legal representatives, successors and assigns.

The parties agree to the foregoing by signing in the spaces provided below.

Date:                                    Date: 6 3 2006

Consignor                                Gotta Have Rock and Roll.com

By:                                      By:

4

**SCHEDULE A**
**PROPERTY**

Returns

1. Chuck Berry  film - movie - $1000
2. Sam Kinison  Album  $100
3. Billie Jean lyric  $30,000
4. We are the World  $30,000
5. Live Aid  $15,000
6. Dann Yuko  $400
7. Domain Names  $5,000  (Domain names)
8. Fleetwood setlist  $100

GHRR Initials _____

Consignor's Initials _____

#01790

5

# EXHIBIT B



## The Rock & Roll Auction

Search By: Title and Description                                    | Search

# Lot #15:

# Michael Jackson Handwritten and Signed Lyrics to "Billie Jean"

All > Michael Jackson

### RETURN TO CATALOG

**Bidding**                                                                    **Watch this lot**

This lot is closed for bidding. Bidding ended on: 3/11/2010

This is one of the most important handwritten manuscripts to ever come to auction. Written on white 8 x 10 paper in black marker on six pages, Michael Jackson has written out the complete lyrics to his hit song "Billie Jean" along with writing the title "Billie Jean" and signing his name on the first page. "Billie Jean" is not only considered Michael's finest song, it is also considered one of the greatest music videos ever created and the video that broke racial barriers by being the first video of a black artist broadcast on MTV. "Billie Jean" is a platinum selling single off the biggest selling album of all time "Thriller." This song has won two Grammy Awards, an American Music Award and many other distinguished awards. Very good condition.
Estimate: 35000-45000



Click on a thumbnail above to display a larger image below
Hold down the mouse button and slide side to side to see more thumbnails(if available).

Case 1:15-cv-07269-SAS   Document 4-7   Filed 10/02/15   Page 19 of 21



Click above for larger image.

## Bidding
### Current Bidding

**Lot Closed**

| | |
|---|---|
| Minimum Bid: | $30,000 |
| Final Bid: | $0.00 |
| Number of Bids: | 0 |

  

**SimpleAuctionSite.com**

© Software Copyright 2004-2015 SimpleAuctionSite. All rights reserved.

2/5/2015 12:44 PM



| Home | Rules | |
|---|---|---|
| Auction | About Us | Search |
| My Account | Consignments | When & How the Auction Closes |
| Register | How To Bid | |

## The Rock & Roll Auction

Search By: Title and Description                                    Search



## Lot #16:

# Michael Jackson Handwritten and Signed Lyrics for "We Are The World"

All > Michael Jackson

RETURN TO CATALOG

**Bidding**                                                           **Watch this lot**

This lot is closed for bidding. Bidding ended on: 3/11/2010

This is an incredible one-of-a-kind item. Michael Jackson has handwritten the complete lyrics to "We Are The World" on a promotional poster for his hit album "Bad." Written in black sharpie pen and signed "Michael Jackson." The poster measures 12 x 29.5 and is in very good condition. "We are the World" was written by Michael Jackson and Lionel Richie and has become one of the biggest selling singles of all time. The song was released March 7,1985 and was the first single to ever be certified multi-platinum. The "We Are the World" recording features possibly the greatest assemblage of composers and musicians ever to appear on one song: Ray Charles, Stevie Wonder, Bob Dylan, Bruce Springsteen, Smokey Robinson, Tina Turner, Dionne Warwick, Willy Nelson, Quincy Jones, Al Jarreau, James Ingraham, and many more. Rarely do you find a set of lyrics of this magnitude with a graphic so stunning it will dominate any wall it is hung on.
**Estimate: 35000-40000**



Click on a thumbnail above to display a larger image below
Hold down the mouse button and slide side to side to see more thumbnails(if available).

2/5/2015 12:44 PM

Case 1:15-cv-07269-SAS   Document 4-7   Filed 10/02/15   Page 21 of 21



**Click above for larger image.**

## Bidding                                    Lot Closed

**Current Bidding**

Minimum Bid:      $30,000
Final Bid:        $0.00
Number of Bids:   0

 

**SimpleAuctionSite**.com

© Software Copyright 2004-2015 SimpleAuctionSite. All rights reserved.