UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PETER SLINGLUFF,

                               Petitioner,                        15 Civ. 7269(SAS)(FM)

   -against-

GOTTA HAVE ROCK AND ROLL.COM, LLC,
EDWARD KOSINSKI, and GOTTA HAVE IT!
COLLECTIBLES, INC.,

                               Respondents.
_____

### RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION TO CONFIRM THE ARBITRATION AWARD AND IN SUPPORT OF RESPONDENTS' MOTION TO <u>VACATE OR MODIFY THE ARBITRATION AWARD</u>

      Respondents Gotta Have Rock and Roll.Com, LLC ("GHRR"), Edward Kosinski ("Kosinski"), and Gotta Have It! Collectibles, Inc. ("GHI"), submit this Memorandum of Law

      (1) in opposition to the Petition to confirm the arbitration award (the "Award") issued by Arbitrator John Brickman in an arbitration (the "Arbitration") administered by the American Arbitration Association ("AAA") (AAA No. 01-14-0001-7650) in which Peter Slingluff ("Slingluff"), Petitioner in this case, was the Claimant and Respondents in this case were the Respondents; and

      (2) in support of Respondents' motion, pursuant to sections 10(a)(4) and 11(b) of the Federal Arbitration Act, 9 U.S.C. § 1 et seq, to vacate or modify the Award and (b) to stay any further assessment of interest against Respondents pending the Court's determination of this motion.

## RELIEF REQUESTED

Respondents request an order vacating the Award under 9 U.S.C. §10(a)(4) on the grounds that the Arbitrator exceeded his power and showed manifest disregard for the law (i) by relying, in whole or in part, upon an improper and/or non-existent amendment to Slingluff's claim; (ii) by awarding lost profits to Slingluff in violation of the agreement incorporating the arbitration provision; and (iii) by awarding attorney's fees against two Respondents who were not parties to the Consignment Agreement (the "Consignment Agreement").  Alternatively, the Award should be modified under 9 U.S.C. § 11(b) by (i) reducing the principal amount awarded to Petitioner to accurately reflect the profits received by Respondent Kosinski from his sale of the items (the "Consigned Items") that were the subject of the arbitration in accordance with Petitioner's demand for arbitration and the matters submitted by Petitioner to arbitration; (ii) reducing any award by the amount previously paid to Slingluff for the Consigned Items; (iii) and re-computing the interest award in accordance with such reductions.

For these same reasons, Claimant's Petition to confirm the Award should be denied. Respondents also request that the Court stay the accrual of additional interest on the principal amount of the judgment until the final disposition of this motion.

## ISSUES ADDRESSED

1.  The Arbitrator exceeded his power and authority by issuing an award based upon Claimant's purported amended claim since (i) Claimant failed to amend his claim within the time period designated by the Arbitrator; (ii) at no time did the Arbitrator extend the time for Claimant to amend his claim; and (iii) Respondents were never advised of any amended claim or afforded an opportunity to respond to an amended claim.

2. The Arbitrator exceeded his power and authority by awarding lost profits to Claimant in violation of the express language of the Consignment Agreement.

3. The Arbitrator exceeded his power and authority and miscalculated damages by failing to accurately calculate the profits received by Kosinski from his resale of the Consigned Items.

4. The Arbitrator exceeded his power and authority and miscalculated damages by failing to reduce his award to Claimant by those funds already received and acknowledged by Claimant.

5. The Arbitrator exceeded his power and authority and showed manifest disregard for the law by awarding attorney's fees against Respondents GHI and Kosinski under the Consignment Agreement since neither GHI nor Kosinski was a party to the Consignment Agreement.

**STATEMENT OF FACTS**

On or about January 7, 2015, Slingluff filed a Demand for Arbitration (the "Demand") with the AAA, seeking to arbitrate claims against the Respondents and Gotta Have It! Auctions, Inc.[1] (A copy of Slingluff's Demand for Arbitration is annexed to the accompanying Declaration of Hartley T. Bernstein [the "Bernstein Declaration"] as Exhibit "A"). Slingluff's claims arose from his consignment of the Consigned Items, which consisted of certain autographed Michael Jackson collectibles to GHRR pursuant to the Consignment Agreement between Slingluff and GHRR. Specifically, the Consigned Items consisted of six pages of handwritten lyrics of the song *Billie Jean* (the "Billie Jean Lyrics") and a poster bearing handwritten lyrics of the song *We Are the World* (the "Poster"). (A copy of the Consignment Agreement is annexed to the

---
[1] Slingluff subsequently agreed to discontinue his claims against Gotta Have It! Auctions, Inc.

3

accompanying Bernstein Declaration as Exhibit "B".) Neither Kosinski nor GHI was a party to the Consignment Agreement.

The Consignment Agreement provided, among other things, that "[a]ny controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association." The Consignment Agreement also limited the damages that a consignor, such as Slingluff, was entitled to recover, stating:

> **IN NO EVENT SHALL GHRR AND/OR OUR SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS OR SUPPLIERS BY LIABLE TO THE CONSIGNOR FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, *INCLUDING (WITHOUT LIMITATION) LOST PROFITS* AND/OR LOST INCOME, WHETHER OR NOT WE HAD KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED, FOR ANY REASON WHATSOEVER, INCLUDING (WITHOUT LIMITATION) DAMAGES ALLEGEDLY ARISING OUT OF OR IN CONNECTION WITH OUR SITE, OUR SERVICES OR THIS AGREEMENT.** (Italics added).

Finally, the Consignment Agreement provided that "[a]n arbitrator shall award to the prevailing party, in addition to any other relief deemed appropriate, the prevailing parties'[sic] reasonable attorney's fees and costs of arbitration, whether or not those are otherwise available to the prevailing party by statute."

Slingluff alleged that the Respondents breached the Consignment Agreement by either retaining the Consigned Items or selling them to a related party. Slingluff's Demand conceded that Respondents had "remitted $40,500" to Slingluff for the Consigned Items, but that the "Consigned Items thereafter appeared at another auction where they fetched a sale price of $312,000.00." He demanded payment of $271,700.00, which equaled the alleged resale price of

the Consigned Items, less the $40,500 Slingluff already had received. Slingluff also demanded the payment of interest and attorney's fees pursuant to the Consignment Agreement.

Neither Kosinski nor GHI was a party to the Consignment Agreement. In response to the Demand, counsel for Respondents advised Slingluff's attorney that, although Kosinski was not a party to the Consignment Agreement, he would agree to arbitrate Slingluff's claims before the AAA, provided Slingluff agreed not to bring a separate action against Kosinski in court or any other forum. (A copy of the February 5, 2015 letter confirming this understanding is annexed to the Bernstein Declaration as Exhibit "C").

On or about February 5, 2015, Respondents GHRR and Kosinski served their response to the Demand, denying Slingluff's allegations and noting, in particular, that Kosinski was not a party to the Consignment Agreement and therefore not liable for any breach of that Agreement. (A copy of Respondents' Answer is annexed to the Bernstein Declaration as Exhibit "D"). Although GHI, like Kosinski, was not a party to the Consignment Agreement and had no independent business relationship with Slingluff, GHI subsequently agreed to participate in the AAA arbitration as well and joined in the Answer. (A copy of the March 9, 2015 letter confirming GHI's participation in the arbitration is annexed to the Bernstein Declaration as Exhibit "E"). Since GHI, like Kosinski, was not a party to the Consignment Agreement, it was neither liable for its breach nor constrained by its terms.

In or about March 2015, John Brickman, Esq. was designated by the AAA as the Arbitrator of Slingluff's claims. On or about April 1, 2015, Mr. Brickman issued a *First Pre-Hearing Order* which provided, among other things, that "*[b]y June 1, 2015, either side may amend its pleading*." (Italics added). (A copy of the Arbitrator's First Pre-Hearing Order is annexed to the Bernstein Declaration as Exhibit "F"). Respondents served an Amended Answer

5

on June 1, 2015. (A copy of Respondents' Amended Answer is annexed to the Bernstein Declaration as Exhibit "G"). Slingluff did not serve any amended Demand. At no time did Mr. Brickman issue a subsequent order expanding or extending the time for parties to amend their pleadings; Slingluff never has served any amended Demand or asked for leave to do so.

The Arbitration hearing commenced on July 15, 2015 in New York, New York, and continued on July 16, 2015 and July 21, 2015. On September 11, 2015, the Arbitrator issued an Award which provided that:

> [H]aving been duly sworn and having heard the proofs of both parties, Respondents being represented by Bernstein Cherney, LLP, by Hartley Bernstein and Claimant being represented by Gardner & Rosenberg, P.C., by Nicholas Rosenberg, ***and Claimant having amended his claim and the Arbitrator having considered same***, [I] hereby award as follows:
>
> Claimant shall recover of Respondents, jointly and severally, (i) the principal sum of $370,012.50, plus (ii) interest at 9% on $43,750 of such principal sum from October 8, 2010 through September 15, 2015, in the sum of $ 19,455.01, plus (iii) interest at 9% on $4,062.50 of such principal sum from October 21, 2011, through September 15, 2015, in the sum of $1,428.01, plus (iv) interest at 9% on $41,600 of such principal sum from June 23, 2012 through September l5, 2015, in the sum of $12,100.19, plus (v) interest at 9% on $280,600 of such principal sum from June 25, 2011 through September 15, 2015, in the sum of $106,795.24, plus (i) attorneys' fees in the sum of' $100,000, for a total of $609,790.95, which such total sum shall be paid to Claimant within 30 days of the date of this award without further interest, and which such total sum, if not paid within 30 days of the date of this award. shall bear interest at 9% commencing 30 days after the date of this award. (Emphasis added).

A copy of the Arbitration Award is annexed to the Bernstein Declaration as Exhibit "H."

Although the Arbitration Award did not elaborate upon the basis for the arbitrator's calculations, the Arbitrator's calculations mirrored the "profits" that Slingluff claimed, in a Post-Hearing Memorandum, that Kosinski received from his resale of the Consigned Items in four auctions conducted by a third-party auction house over the following two years. (A copy of

6

Slingluff's Post-Hearing Memorandum is annexed to the Bernstein Declaration as Exhibit "I"). As reflected in the documents introduced at the arbitration, Kosinski did not receive the profits claimed by Slingluff in Slingluff's Post-Hearing Memorandum, but instead received lesser amounts after the deduction of fees paid by Kosinski and the buyers of those items to the auctioneer.

**ARGUMENT**

**POINT I**

**THE DISTRICT COURT HAS AUTHORITY TO
VACATE OR MODIFY THE ARBITRATION AWARD**

Although great deference is afforded to arbitration awards, the Federal Arbitration Act ("FAA"), 9 U.S.C.§1 et seq., provides circumstances under which awards may either be vacated or modified by a federal district court. *Stolt-Nielson S.A. v. Animalfeeds International Corp.,* 548 F3d 45 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 662, 129 S.Ct. 2793 (2010); *Diapulse Corporation of America v. Carba, Ltd*, 626 F.2d 1128 (2d Cir, 1980). More particularly, the FAA specifically permits an award to be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. §10.

Vacatur is not the sole remedy provided under the FAA. An arbitration award also may be modified or corrected by a federal court upon the application of any party to the arbitration:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

7

> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. §11.

In addition to these statutory grounds for vacatur, the Second Circuit has held that a court may vacate an award if it finds that an arbitrator has acted in 'manifest disregard of the law.' *Sayigh v. Pier 59 Studios, L.P.*, 2015 WL 997692 *5 (S.D.N.Y. 2015), citing *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.,* 592 F.3d 329, 339–40 (2d Cir.2010). In applying this standard, the Court will "vacate arbitration awards in the rare instances in which 'the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Stolt-Nielson S.A. v. Animalfeeds International Corp.,* 548 F3d, supra, at 95, citing *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 217 (2d Cir. 2002). See also *Sayigh v. Pier 59 Studios, L.P.*, 2015 WL 997692, supra at *5. In such instances the arbitrators have " 'failed to interpret the contract at all'…for parties do not agree in advance to submit to arbitration that is carried out in manifest disregard of the law." *Stolt-Nielson S.A. v. Animalfeeds International Corp.,* 548 F3d, supra. (internal citation omitted). Put another way, the arbitrators have thereby " 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter [was not made].' 9 U.S.C. § 10(a)(4)." Id.

# POINT II

## THE AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS

    a.    The Arbitrator Improperly Issued an Award Based Upon An Improper or Non-Existent Amendment to Claimant's Demand

The Award is fatally flawed. Although the Arbitrator offered no reasoning for his decision, or any explanation of his basis for assessing damages - and indeed was not required to do so – he declared that he was issuing the Award after having "heard the proofs of both parties…***and Claimant having amended his claim and the Arbitrator having considered same***." (Emphasis added). That language is mystifying. More importantly, it undermines the integrity of the Award and the process. *Claimant never amended his claim* – even though the Arbitrator afforded him ample opportunity to do so.

The Arbitrator's First Pre-Hearing Order directly addressed the possibility and timing of amended pleadings. Prior to the issuance of the Arbitrator's First Pre-Hearing Order, counsel for the parties participated in a pre-hearing conference call with the Arbitrator, at which time a schedule was established for the arbitration hearing, discovery, and various procedural matters, including the amendment of pleadings. At that time, the pleadings consisted solely of Claimant's Demand and Respondents' Answer.

Following that conference call, the Arbitrator issued his First Pre-Hearing Order, providing, at paragraph 7, that **"[b]y June 1, 2015, either side may amend its pleading**." (Emphasis added). Respondents served an Amended Answer on June 1, 2015. Claimant did not file any amendment to his Demand on or before that date or request any additional time in which to do so. *At no time, either before or after June 1, 2015, did Claimant serve an amendment on Respondents; nor did Claimant ever ask for an extension of his time to file an amended pleading.*

It is abundantly clear that the Arbitrator exceeded his powers by relying upon a purported "amendment" to Claimant's Demand that either did not exist or was not served upon Respondents. Any attempt to amend the Demand should have been made by Claimant in a clear and unequivocal manner and consistent with the requirements imposed by the Arbitrator's First Pre-Hearing Order, affording the Respondents both notice of that amendment and an opportunity to respond. Due process requires no less. *Indeed, even now, Respondents have no way of knowing the nature of the amendment to which the Arbitrator was referring*.

The Arbitrator's reference to Claimant's amended pleading is therefore both confounding and problematic. There is no basis upon which Respondents can ascertain the nature or extent of the "amendment" to which the Arbitrator refers – and Respondent should not be required to speculate as to the Arbitrator's meaning. "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes." *Diapulse Corporation of America v. Carba, Ltd.*, 626 F.2d supra at 1110 (2d Cir. 1980). It is not possible to accomplish that goal, however, unless a Respondent is fully informed of all claims and all parties meet on a level playing field.

There are limited possible scenarios here. Either (i) Claimant failed to file and serve an amended pleading; (ii) Claimant delivered an amended pleading to the Arbitrator on a timely basis on or before June 1, 2015, but did not serve Respondents; or (iii) Claimant delivered an amended pleading to the Arbitrator after June 1, 2015, in violation of the Arbitrator's First Pre-Hearing Order, and did not serve Respondents. In any case, if either scenario (ii) or (iii) occurred, Respondents have been denied an opportunity to respond to an amendment that the Arbitrator considered significant when rendering his decision.

The Arbitrator's First Pre-Hearing Order clearly established the parameters and timing

for any amendments to the pleadings. Because the deadline for such amendments was well in advance of the hearing dates, the parties would have had ample time to consider and respond to any amended claims and defenses filed on or prior to the deadline. Respondents were deprived of that ability. Here the Arbitrator violated his own Pre-Hearing Order; deprived Respondents of a full and fair opportunity to respond to any amended claim; and may have assumed or accepted an amendment that never was properly or timely served upon Respondents. It is clear that the Arbitrator exceeded his powers when he rendered a decision based, in any part, upon this amendment. Under the circumstances it is appropriate for the Arbitration Award to be vacated, not confirmed.

      b.      The Arbitrator Exceeded His Powers By Improperly Awarding Lost
            <u>Profits to Claimant</u>

"Arbitration is essentially a creature of contract in which the parties themselves charter a private tribunal for the resolution of their disputes and are free to enlarge, restrict, modify, amend or terminate their agreement to arbitrate." *Matter of Instituto De Resseguros Do Brasil v. First State Ins. Co.*, 221 A.D.2d 266, 634 N.Y.S.2d 79 (1st Dep't 1995). See also *In the Matter of All Metro Health Care Services, Inc. v. Edwards*, 57 A.D.3d 892, 870 N.Y.S.2d 108 (2d Dep't 2008); *In the Matter of Village of Chester v. Local 445*, 118 A.D.3d 1012, 988 N.Y.S.2d 652 (2d Dep't 2014).

"[P]arties may choose to make any particular contract requirement…a condition in arbitration." *In the Matter of Brenda Deluca Trust and Elhannon, LLC*, 108 A.D.3d 902 (3d Dep't. 2013). "[I]t has long been the policy of [New York] to 'interfere as little as possible with the freedom of consenting parties in structuring their relationship.'" *Credit Suisse First Boston Corp. v. Pitofsky,* 4 N.Y.3d 149, 155, 791 N.Y.S.2d 489 (2005), quoting *Matter of Siegel*

11

*[Lewis],* 40 N.Y.2d 687, 689, 389 N.Y.S.2d 800 (1976). Accordingly, "the parties control the scope of arbitration, the authority and selection of arbitrators, the choice of law, every aspect of the arbitration (*see Matter of Salvano v. Merrill Lynch, Pierce, Fenner & Smith,* 85 N.Y.2d 173, 182–183, 623 N.Y.S.2d 790, 647 N.E.2d 1298 (1995) )." *Brady v. The Williams Capital Group, L.P.*, 64 A.D.3d 127 (1st Dep't. 2009).

In the instant case, GHRR and Slingluff entered into a Consignment Agreement that contained a clause that provided for arbitration but specifically, and boldly, limited its scope. The Consignment Agreement specifically precluded an award of lost profits to Slingluff. The language is clear and bold: **IN NO EVENT SHALL GHRR AND/OR OUR SUBSIDIARIES, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS OR SUPPLIERS BY LIABLE TO THE CONSIGNOR FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, *INCLUDING (WITHOUT LIMITATION) LOST PROFITS…*"** Despite this admonition, Slingluff demanded damages that equaled his alleged lost profits. A Post-Hearing Memorandum submitted by Slingluff's attorneys demanded damages equal to each of the subsequent sales of the Consigned Items by Kosinski, in other words, the profits that Kosinski earned, and that Slingluff believed should have been his.[2] (A copy of Slingluff's Post-Hearing Memorandum is annexed to the Bernstein Declaration as Exhibit "I").

Slingluff's Post-Hearing Memorandum makes this abundantly clear. He proposes that the

---

[2] Slingluff attempted to circumvent the bar on lost profits by characterizing his damage claim as a demand for Kosinski's "ill-gotten gains," citing, as his support for that proposition, this Court's decision in *Sotheby's Inc. v. Minor*, No. 08-Civ. 7694, 2009 WL 3444887, at *7 n.2 (S.D.N.Y. Oct. 26, 2009). Slingluff's reference to that case was, however, unfounded. In *Minor*, Sotheby's had sued a buyer for failure to pay for items purchased at an auction. The Court then denied the buyer's attempt to amend its pleadings to add a counterclaim for breach of fiduciary duty. At no point, however, did the Court decree that proceeds from the auction (or any other auction) constituted "ill-gotten gains," or otherwise imply that the eventual sale price of auctioned items did not reflect a consignor's profits or potential profits. Indeed, the eventual sales price of the items would logically be the best evidence of a wronged consignor's lost profits.

Arbitrator award damages based upon either:

(i) the purported value of the Consigned Items when Slingluff sold them to Kosinski – claiming that the Billie Jean lyrics had a value of $120,000-$160,000 and that the Poster had a value of $275,600 at the time; or

(ii) the profits received by Kosinski from his subsequent sale of those items – $89,412.50 from the sale of the Billie Jean lyrics (which sold in three separate auctions for $43,750, $41,600, and $4,062.50, respectively) and $280,500 from sale of the Poster.

The Arbitrator selected the second theory, transferring Kosinski's profits to Slingluff – *to the penny*. The import of that award is unambiguous. The Arbitrator simply transferred the profits from Kosinski to Slingluff, rewarding Slingluff with his "lost profits" in direct contravention of the Consignment Agreement. Slingluff should not be permitted to avoid that conclusion by re-characterizing the award as "ill-gotten" gains. As Abraham Lincoln is said to have famously asked, "How many legs would a dog have if you called a tail a leg. Four. Because calling a tail a leg does not make it one." The attribution to Lincoln may be apocryphal, but it is nonetheless informative. By any name, the Award consists of Slingluff's lost profits, which were explicitly prohibited under the Consignment Agreement. Therefore, the Award must be vacated.

## POINT III

## THE AWARD SHOULD BE MODIFIED BECAUSE THE ARBITRATOR FAILED TO PROPERLY CALCULATE DAMAGES

a. The Arbitrator Failed to Properly Reduce the Award by the Amount Previously Paid By Kosinski to Slingluff

Any award to Slingluff should have been reduced by the amount previously paid to Slingluff by Kosinski for the Consigned Items. Indeed, that calculation would be consistent with Slingluff's expectations, as reflected in his Demand. The Demand alleged that Respondents purchased the Consigned Items from Slingluff for $40,500 and later resold them for $312,000. It requested specific damages totaling $271,700, almost the exact difference between the amount he had received and the subsequent sales price.[3]

Credit for Kosinski's $40,500 payment would have been appropriate under either damage theory propounded by Slingluff. If, for example, the arbitrator based his award on the purported value of the Consigned Items at the time of the breach, the $40,500 should have been applied against that valuation; interest should have been calculated based on the remaining balance; and an award should have been issued in that net amount. If, as seems more likely the case here, the award was based upon the subsequent sales prices of the Consigned Items, the $40,500 payment should have been deducted from those proceeds as well. In either event, as it now stands, it is Slingluff who has been unjustly enriched by retaining the proceeds from his original sale of the Consigned Items as well as the profits from Kosinski's later sales. Such "double-counting" is patently unfair to Respondents.

This computational error falls firmly within the grounds established by the FAA for

---

[3] Slingluff offers no explanation for the de minimis $200 differential, which would appear to be a computational error on his part.

modification of an arbitration award since it reflects "an evident miscalculation of figures." 9 U.S.C. §11(a).

b. The Arbitrator Improperly and Inaccurately Calculated Kosinski's Profits

Having determined to award damages based upon Slingluff's request for Kosinski's profits (despite the contractual bar to such award), the Arbitrator merely adopted the so-called lost profit amounts recited by Slingluff in his Post-Hearing Memorandum, apparently without making any independent calculation or reviewing the hearing exhibits that specifically delineated those profits. Slingluff's numbers, however, did not accurately reflect Kosinski's profits. Consequently, the Award should be modified to correct this computational error, even if it is not vacated.

Kosinski sold the Consigned Items in four separate auctions conducted by Julien's Auctions. The bidding history for the Consigned Items at two of those auctions was reflected on exhibits that were produced to the Arbitrator without objection from any party. (Copies of the Julien's Auctions bidding history for the Poster and four pages of the Billie Jean lyrics are attached to the Bernstein Declaration as Exhibit "J"). Those exhibits established that the final bid for the Poster on June 26, 2011 was $220,000.00 and the final bid for the four pages of Billie Jean lyrics on June 25, 2012 was $32,500.00.[4] Those prices reflected Kosinski's *actual profits* from the two sales. No evidence was introduced to suggest that Kosinski received any greater amounts. Nevertheless, Slingluff's Post-Hearing Memorandum incorrectly recited the sales prices for these items as $280,600 and $40,600, respectively, citing to documents that reflected

---

[4] No bidding history for the other two auctions of Consigned Items was introduced at the arbitration because Slingluff did not claim those losses until submitting his Post-Hearing Memorandum. Accordingly, Respondents were deprived of any opportunity to respond or to introduce evidence reflecting the accurate results of those sales and the net profits received by Kosinski after deduction of the buyers' fees. In any event, the so-called "profits" demanded by Slingluff from the sale of these items were similarly inflated and must be appropriately modified.

both (i) the amounts received by Kosinski, and (ii) additional amounts paid by the buyers of the items to Julien's Auctions as a "Buyer's Premium", while at the same time failing to recognize that these so-called profits should have been reduced by the "Seller's Premium" - the commissions paid by Kosinski to Julien's Auctions. Those "Buyer's Premiums" and "Seller's Premiums" were retained by Julien's Auctions as its fee for the sales; *they never were received by Kosinski and rightfully should have been deducted from any calculation*. The Arbitrator's Award simply adopted these misleading and inaccurate calculations.

For the foregoing reasons, the Award must be modified and corrected to accurately reflect Kosinski's actual profits.

c. The Arbitrator Exceeded His Powers and Disregarded Prevailing Law By Awarding Attorney's Fees Against GHI and Kosinski

It is well-settled that, under New York law, "attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule." *A.G. Ship Maintenance Corp v. Lezak*, 69 N.Y.2d 1, 511 N.Y.S.2d 216 (1986); *Hooper Associates, Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 549 N.Y.S.2d 365 (1989); *Mount Vernon School District v. Nova Casualty Company*, 19 N.Y.3d 28, 39, 945 N.Y.S.2d 202 (2012); *IG Second Generation Partners v. Kaygreen Realty Co.*, 114 A.D.3d 641, 643, 980 N.Y.S.2d 479 (2nd Dep't 2014).

There is no statute that would mandate an attorney's fee award in this case. Rather, Slingluff has relied upon the Consignment Agreement as the basis for asserting that demand. While that may have compelled GHRR to pay Slingluff's reasonable attorneys' fees if Slingluff prevailed, it created no such obligation for GHI and Kosinski. As noted above, the Consignment Agreement was a contract between GHRR and Slingluff. Neither GHI nor Kosinski was a party

to that contract.  While it is true that, after Slingluff filed his Demand, GHI and Kosinski agreed to submit to arbitration in order to resolve all claims in the same forum, at no time did GHI or Kosinski agree to become parties to the Consignment Agreement or to be bound by any of its terms or conditions.

For the foregoing reasons, the Award must be modified and corrected to accurately reflect that Kosinski and GHI are not liable for the award of attorney's fees.

## POINT IV

### THE COURT SHOULD STAY ASSESSMENT OF ADDITIONAL INTEREST PENDING RESOLUTION OF THIS MOTION

The Award provides, in pertinent part, that:

> [The] total sum shall be paid to Claimant within 30 days of the date of this award without further interest, and which such total sum, is not paid within 30 days of the date of this award shall bear interest at 9% commencing 30 days after the date of this award.

Respondents ask this Court to stay the further accrual of interest pending the outcome of this motion.  The FAA affords a party the opportunity to seek vacatur or modification of an arbitration award where, as here, the Arbitrator has exceeded his power or his award requires correction and modification.  In this case, the Award appears calculated to discourage Respondents from pursuing such relief by subjecting them to the prospect of spiraling interest at the 9% annual rate.

Moreover, the Arbitrator's direction is vague since it suggests that Respondents would be required to pay interest on the entire principal judgment of $370,012.50, even if they made a

partial payment in the interim.  And there is no mechanism for determining whether such partial payment would be applied to principal, interest or the legal fees awarded to Slingluff.

Given the errors by this Arbitrator, as noted herein, and in the interest of fairness, no further interest should be assessed pending the Court's decision on this motion.

## CONCLUSION

For the foregoing reasons, the Award should not be confirmed.  Instead, the entire Award should be vacated under 9 U.S.C. § 10(a)(4) as exceeding the Arbitrator's power.  Alternatively, the Award should be modified under 9 U.S.C. § 11(b) by properly calculating the amount of Kosinski's profits, reducing the Award by the amount previously paid to Slingluff, recalculating interest on the adjusted principal award, and striking the attorneys' fee award against GHI and Kosinski.

Respectfully submitted this 2nd day of October 2015

BERNSTEIN CHERNEY LLP.

  /s/ Hartley T. Bernstein
Hartley T. Bernstein, Esq.
767 Third Avenue, 30th Floor
New York, N.Y. 10017
(212) 381-9684 – Phone
(646) 304-9535 - FAX

## **CERTIFICATE OF SERVICE**

      On October 2, 2015, I served a copy of the foregoing document on the following counsel of record by filing a copy of it through the Court's CM/ECF electronic filing system:

Nicholas Rosenberg, Esq.

Gardner & Rosenberg P.C.
33 Mount Vernon Street
Boston, Massachusetts 02108
Tel. 617.390.7570
Fax 617.972.7983


_____
Hartley T. Bernstein, Esq.